UNITED STATES DISTRICT COURT
EASTERN DIRSTICT OF NEW YORK
-------------------------------------------------------------------X
JOSE SANCHEZ AND                                    16-CV-02064 (DRH) (ARL)
ANTONIO MEJIA PALACIO,
                                    Plaintiffs,

        -against-

FIRST CLASS HOME IMPROVEMENT, LLC,
FIRSTCLASS ROOFING, INC.,
OCEANSIDE FIRST CLASS ROOFING, INC.,
And ETHAN SAGE (aka JESUS MANUEL TORRES
CANDELARIA, aka JESUS TORRES),

                                    Defendants.
-------------------------------------------------------------------X


<u>DEFENDANTS' PROPOSED CONCLUSIONS OF LAW</u>


 Lee R. Pearlman, Esq.
*Attorney for Defendants*
54 Blydenburgh Road
Centereach, New York 11720
Tel.: 516 353 8481
Fax: 516 307 1551
leerpearlmanesq@aol.com

## CONCLUSIONS OF LAW

At the conclusion of plaintiffs' presentment of its case upon bench trial, defendants orally moved to dismiss plaintiffs' claims. Federal Rules of Civil Procedure ("FRCP") 41 (b). The Court reserved decision. Defendants now renew their request. Defendants also, in reliance on their pre-trial memorandum, renew their request that the Court to deny any reward of attorneys' fees to plaintiffs' counsel.

Plaintiffs are low skilled Hispanic day laborers, who were paid by the day and offered their services as day laborers to others besides defendants. As to todays' generation of Hispanic day laborers offering their services to local contractors, See, e.g. *John Doe No. 1 v. Village of Mamaroneck*, 462 F.Supp.2d 520, (S.D.N.Y.2006). Of the principal questions posed by this case is whether plaintiffs, as day laborers, are covered "employees" or non-covered "sub-contractors" under the Fair Labor Standards Act ("FLSA") and under the New York Labor Law ("NYLL").

## PUBLIC POLICY UNDERLYING THE FLSA REQUIRES DISMISSAL OF PLAINTIFFS' CLAIMS

"The FLSA does not guarantee that employees are paid for every hour of work and does not allow for employees to recover more than the statutory minimum wage" for unpaid, non-overtime hours. *Avery v. Chariots For Hire,* 748 F. Supp. 2d 492, 501 (D. Md. 2010).

An employment practice does not violate the FLSA unless the FLSA expressly prohibits it. *See, Christensen v. Harris Cnty.*, 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). The daily pay rates that defendants paid plaintiffs as day laborers, do not expressly violate the FLSA and are therefore not prohibited.

The FLSA, 29 U.S.C. § 201 *et seq.,* was enacted to ensure that employees receive a "fair day's pay for a fair day's work," *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 578, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message of President Franklin D. Roosevelt)),

*superseded by statute,* Portal-to-Portal Act, 61 Stat. 86-87, *as recognized in Trans World Airlines v. Thurston,* 469 U.S. 111, 128 n. 22, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

Stated differently, the FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours, `labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys. Inc.,* 450 U.S. 728, 739 (1981) (quoting 29 U.S.C § 202(a)) (footnote omitted).

On the pay end, the FLSA "guarantee[s] compensation for all work or employment engaged in by **employees covered by the Act.**" *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 602-03, (1944) [Emphasis added]. Not all work-related activities, however, constitute "work or employment" requiring compensation. *Kavanagh v. Grand Union Co., Inc.,* 192 F.3d 269, 271-72 (2d Cir.1999).

Here the evidence is clear that plaintiffs were well paid far in excess of the minimum wage, especially given their lack of skills and being day laborers. Thus, the aims of the FLSA have more than been met. Plaintiffs' claims should therefore be dismissed.

## PLAINTIFFS FAILED TO MEET THEIR THRESHOLD BURDEN OF ESTABLISHING "EMPLOYEE" STATUS.

The threshold inquiry for the court is if Plaintiffs are uncovered "independent contractors" or covered "employees" under the FLSA and the NYLL. *See Deboissiere v. Am. Mod. Agency,* No. 09 Civ. 2316, 2010 WL 4340642, at *3 (E.D.N.Y. Oct. 22, 2010) ("New York's labor laws apply only to employees, not independent contractors."); *Campos v. Zopounidis,* No. 09 Civ. 1138, 2011 WL 2971298, at *3 (D. Conn. July 20, 2011) ("The FLSA broadly defines an employee as `any individual employed by an employer' and defines `employ' as `to suffer or permit to work.' 29 U.S.C. §§ 203(e)(1), (g). Independent contractors are not covered by the FLSA.").

Whether this is a factual inquiry or purely legal, depends on the circumstances presented. *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149 (2d Cir.1998). The "…factors to be considered in determining whether a person was an employee or an independent contractor in light of the totality of the circumstances, and ... the 'existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts — whether workers are employees or independent contractors — is a question of law.'" *Id.* (quoting *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1059 (2d Cir. 1988)).

*Kirsch* further provides that under NYLL the question of "whether [a] plaintiff was an employee or an independent contractor" is "a question of fact for trial." (Citing, *Rivers v. Butterhill Realty,* 145 A.D.2d 709, 711, 534 N.Y.S.2d 834, 836 (3rd Dep't 1988); and *see, Hernandez v. Chefs Diet Delivery, LLC,* 81 A.D.3d 596, 915 N.Y.S.2d 623 (2nd Dep't 2011).

The comparability of the tests under the NYLL and the FLSA has been duly noted while the tests have been analyzed together. *See, e.g., Deboissiere v. Am. Mod. Agency, supra; Sellers v. Royal Bank of Canada,* 12 Civ. 1577(KBF), 2014 WL 104682, at *6 (S.D.N.Y. Jan. 8, 2014); *Browning,* 885 F.Supp.2d at 599; *Velu v. Velocity Express, Inc.,* 666 F.Supp.2d 300, 306-07 (E.D.N.Y.2009); *see also Hart,* 967 F.Supp.2d at 924 ("[T]here appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa).").[1]

### PLAINTIFFS WERE INDEPENDENT CONTRACTORS UNDER NYLL

NYLL Article 6 governs employers' payment of wages and benefits to employees. "In order to state a claim under article 6, a plaintiff must first demonstrate that he or she is an employee entitled to its

---

[1] While several courts in this Circuit have interpreted these definitions under the FLSA and NYLL to be coextensive, *see, e.g., Duarte v. Tri-State Physical Medicine & Rehabilitation P.C.,* No. 11 Civ. 3765(NRB), 2012 WL 2847741, at *4 n. 4 (S.D.N.Y. July 11, 2012), the Second Circuit noted that "this question has not been answered by the New York Court of Appeals." *Irizarry v. Catsimatidis,* 722 F.3d 99, 117 (2d Cir.2013).

protections" (*Bhanti v Brookhaven Mem. Hosp. Med. Ctr.,* 260 AD2d 334, 335 [2d Dept 1999]).[2] Although Labor Law § 190 broadly defines an "[e]mployee" as "any person employed for hire by an employer in any employment" (Labor Law § 190 [2]), "[t]his definition excludes independent contractors" (*Akgul v Prime Time Transp.,* 293 AD2d 631, 633 [2d Dept 2002]; *see, Bynog v Cipriani Group,* 1 NY3d 193, 199 [2003]; *Bhanti v Brookhaven Mem. Hosp. Med. Ctr.,* 260 AD2d at 335).

"Under New York law, a person's status as an employee or an independent contractor is a fact-intensive inquiry that depends upon factors such as whether the person: (1) worked at his [or her] own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule." *Deboissiere v. Am. Mod. Agency,* No. 09 Civ. 2316, 2010 WL 4340642, at *3 (E.D.N.Y. Oct. 22, 2010); *see Bynog v. Cipriani Group,* 1 N.Y.3d 193, 198, (2003); *see also Bhanti v. Brookhaven Memorial Hosp. Med. Ctr., Inc.,* supra.

Under NYLL a plaintiff's self-classification as an independent contractor for income tax purposes is a "significant consideration." *Gagen v. Kipany Productions, Ltd.,* 27 A.D.3d 1042, 1043-44, (3rd Dep't 2006); *and see Matter of Stuckelman,* 16 AD3d 882 [3d Dept 2005]. Though not quite to the level of estoppel, Sanchez's signature of his tax returns "under penalty of perjury" declaring independent contractor status, substantially eliminates his claimed employee status. *Deboissiere v. Am. Mod. Agency,* No. 09 Civ. 2316, 2010 WL 4340642, at *3 (E.D.N.Y. Oct. 22, 2010) *Gagen,* supra at 1043-44. .

*Sanabria v Aguero-Borges,* 117 AD3d 1024, 1026 [2d Dept 2014] held that while not being dispositive, a contract designating independent contract status is a significant factor to be considered. *See also,*

---

[2] Plaintiffs' assertion that they are entitled to statutory damages under NY Labor Law Section 195 (1) (a) [Plaintiffs' pre-trial memorandum of law at pages 18-20; and plaintiffs' amended complaint Counts III and IV] first requires the Court to determine if plaintiffs are "employees" under the purview of NY Labor Law. If not, then defendants were not required to provide plaintiffs with employee wage notices. Then plaintiffs would not therefore be entitled to any statutory damages. It is noteworthy that plaintiffs' complaint does not specifically allege that plaintiffs are employees under the NY Labor Law.

*Hernandez v Chefs Diet Delivery, LLC,* 81 AD3d 596,(2d Dept 2011) ; *Araneo v Town Bd. for Town of Clarkstown,* 55 AD3d 516, 518 [2008]; *Gfeller v Russo,* 45 AD3d 1301 [4[th] Dept 2007]; *Matter of Bedin [Trussardi (USA)—Commissioner of Labor],* 257 AD2d 809 [3d Dept 1999])."

The pay per day agreements between the parties provided Plaintiffs (i) had the ability to accept or decline working on any given day; (ii) could work at their own convenience, (iii) were **not** on the defendants' payroll; (iv) had **no** fixed schedule; and (v) had no fringe benefits. These factors indicate Plaintiffs were independent contractors. *See, e.g., Barak,* 87 A.D.3d at 957, 929 N.Y.S.2d at 318.

Here the economic realities matched the expectations under the pay per day agreements. In fact, plaintiffs declined work on certain days **and** offered their services as day laborers to others besides defendants. Their ability to reject assignments indicates their independent contractor status. *See Anyan v. New York Life Ins. Co.,* 192 F.Supp.2d 228, 239 (S.D.N.Y.2002); *Barak v. Chen,* 87 A.D.3d 955, 929 N.Y.S.2d 315 (2nd Dep't 2011);. *Williman v. Ross,* 81 A.D.2d 997, 998, 440 N.Y.S.2d 64 (3rd Dep't 1981); *Velu v. Velocity Exp., Inc.,* 666 F.Supp.2d 300, 307 (E.D.N.Y.2009).

"Even independent contractors, although `independent' in name, are required to keep to a schedule. The fact that an independent contractor is required to be at a job or at a facility at a certain time does not eliminate his status as an independent contractor." *DeSouza v. EGL Eagle Global Logistics,* 596 F.Supp.2d 456, 466 (D.Conn.2009). As another court from this district noted, it is "in the very nature of the [Plaintiffs'] work — delivering and picking up packages — that obliged them to work on certain days and at certain times. Customers would surely not accept deliveries at all hours of the night." *Johnson v. FedEx Home Delivery,* No. 04 Civ. 4935, 2011 WL 6153425, at *14 (E.D.N.Y. Dec. 12, 2011); and *See Claim of Pavan,* 173 A.D.2d 1036, 570 N.Y.S.2d 696 (3rd Dep't 1991).

Similarly, roofing must be done during daylight hours, within the timeframes established by local ordinances and at the customers' convenience. No home owner, or their neighbors for that matter, would

permit noisy and intrusive roofing work be done at night or during early morning hours. Any scheduling taking such factors into account, therefore, does not controvert plaintiffs' status as day laborers/independent contractors.

Under NYLL, Sanchez in providing dumping services using his own truck, acted as an independent contractor. See, *Chaouni v. Ali*, 105 A.D.3d 424, 963 N.Y.S.2d 27, 28 (1st Dep't 2013).See also, *Arena v. Delux Transp. Servs., Inc.,* 3 F.Supp.3d 1, 10 (E.D.N.Y. 2014) ("*Delux Transportation*"); *Leach v. Kaykov,* No. 07-CV4060 (KAM), 2011 WL 1240022, at *23 (E.D.N.Y. Mar. 30, 2011); *Saleem v. Corp. Transp. Grp., Ltd.,* 52 F. Supp. 3d 526, 543, 545 (S.D.N.Y. 2014), aff'd *Saleem v. Corporate Transportation Group, Ltd.*, ___ F.3d ___, ___, 2017 WL 1337227, at *5 (2d Cir. 2017).

Upon the foregoing, Defendants are entitled to judgment as a matter of law dismissing Plaintiffs NYLL claims. *See Sanabria v Aguero-Borges,* 117 AD3d at 1025-1026; *Wecker v Crossland Group, Inc.,* 92 AD3d 870, 871 [2d Dept 2012]).

## PLAINTIFFS WERE INDEPENDENT CONTRACTORS UNDER FLSA

Plaintiffs were day laborers offering their services to defendants and others such that their relationship with defendants was seasonal, and part time. Defendants engaged plaintiffs'' services only on days when defendants had work for plaintiffs and plaintiffs were otherwise available or chose to work. There were no set hours and no sense of permanence to the relationship. See, *Saleem v. Corporate Transportation Group, Ltd.*, ___ F.3d ___, ___, 2017 WL 1337227, at *5 (2d Cir. 2017); *see also Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782, 784 (11th Cir. 2006) (per curiam); *Baker v. Flint Eng'g & Constr. Co.,* 137 F.3d 1436, 1442 (10th Cir. 1998); *Dole v. Snell,* 875 F.2d 810, 811 (10th Cir. 1989); *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058-59 (2d Cir. 1988).

Sanchez performed three separate and distinct set of services (1) day laborer roofing services[3]; (2) independent contractor services using his own dump truck to provide dumping services for defendants and (3) later in the second half of 2015 driving the company van from Oceanside to the customers' homes and then back to Oceanside for a flat rate of $100 per each such occasion and paid in the presence of the other day laborers. [Defendants proposed findings of fact # 42]. The Court is permitted to examine each set of services separately to determine if Sanchez performed it as an independent contractor or an employee.

Independent contractors are not covered by the FLSA. *Brock v. Superior Care, Inc., supra,* at 1058 ; *Campos v. Zopounidis, supra*. The totality of the circumstances demonstrate Plaintiffs are independent contractors. They are clearly not "salaried" employees pursuant to the FLSA, which would require an employee receive the same pay each period "which amount is not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. § 541.602.

In today's world of evolving working relationships and collaborations at this time of growing influence of the internet and changing immigration conditions, the need for flexibility in the Court's examination of these issues is greater than ever to reach a truer picture of the underlying relationship between the parties. *See, e.g*., *Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376, 383 (2d Cir. 2015) [examining interns' roles under the FLSA as employees or non-employees ].

In *Ethelberth v. Choice Sec. Co.,* 91 F. Supp. 3d 339, 352 (E.D.N.Y. 2015) the Court examined whether, as a matter of economic reality, the plaintiff's "overtime" work was performed as an employee, as their non-overtime work was determined to have been, or as an independent contractor. *See also, Thomas v. City of Hudson,* No. 95-CV-0070, 1996 WL 280828 (N.D.N.Y.1996) The Courts in making

---

[3] Palacio provided services to defendants as a day laborer doing low-skilled roofing work while offering his services to others while standing outside near a Home Depot store.

such determinations implicitly recognized that a particular plaintiff could perform one set of services as an employee and another as an independent contractor.

The regulations promulgated under the FLSA expressly recognize that a worker may be employed by more than one entity at the same time. *See* 29 C.F.R. § 791.2 (2003); *see also Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 66, (2d Cir. 2003); *Torres-Lopez v. May,* 111 F.3d 633, 639-45 (9th Cir.1997) (permitting claims against joint employers under FLSA)[4]; *Antenor v. D & S Farms,* 88 F.3d 925, 929-38 (11th Cir.1996) (same).

To determine if an employer-employee relationship exists under FLSA, "the overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the `economic reality' presented by the facts of each case." *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999) (citation omitted).

"Under the `economic reality' test, the relevant factors include `whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Carter v. Dutchess Cmty. Coll.,* 735 F.2d 8, 12 (2d Cir. 1984)); *Wolman v. Catholic Health Sys. of Long Island, Inc.,* 853 F. Supp. 2d 290, 297 (E.D.N.Y. 2012).

Here these factors indicate that Sanchez' acted as an independent contractor in providing dumping services. See, *Herman v. Mid-Atlantic Installation Serv.,* 164 F. Supp. 2d 667, 675 (D. Md. 2000) [Cable installers using their own trucks determined to be independent contractors]; *Parrilla v. Allcom Const. & Installation Services, LLC,* 6:08-cv-1967-Orl-31GJK, 2009 WL 2868432 (M.D. Fla. Aug. 31, 2009)[ cable installers were independent  contractors exempt from the FLSA].   First, Sanchez used his own

---

[4] "New York Labor Law embodies the same standards for joint employment as the FLSA." *Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp.2d 269, 278 (E.D.N.Y.2005).

dump-truck. Second, Sanchez would pick up the refuge at homes of a defendants' customers and then transport it to one or more dump sites of his choosing available to the general public.  Third, dumping was not part of defendants' actual business or integral to its operations. Sage testified at trial that prior to utilizing Sanchez' dump truck and dumping services, defendants had ordered on-site dumpsters from independent carting companies, who would remove the dumpsters when they were filled.

No one factor being dispositive, a court is "…free to consider any other factors it deems relevant to its assessment of the economic realities.'" *Zheng v. Liberty Apparel Co.,* supra at 71-72; see also, *See Superior Care,* 840 F.2d at 1059; *D'Arpa v. Runway Towing Corp.,* 2013 WL 3010810, *12 (E.D.N.Y.2013). For liability liable under the FLSA, a person must be an "employer," which § 3(d) of the statute defines broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (1994). The Supreme Court has emphasized the "expansiveness" of the FLSA's definition of employer. *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973). *Carter v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir.1984).

Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer. In answering that question, the overarching concern is whether the alleged employer possessed the power to control the workers in question, *Carter v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir.1984), with an eye to the "economic reality" presented by the facts of each case, *Goldberg v. Whitaker House Coop.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961).

Whether a worker is treated as an employee or an independent contractor under FLSA is determined not by contractual formalism but by "economic realities." *See Rutherford Food Corp. v. McComb,* 331 U.S. 722, 727 (1947) (internal quotation marks omitted). The analysis of the relationship turns on the "economic reality" test encompassing the totality of circumstances with any relevant evidence examined to prevent a narrow legalistic definition. *See id* .

The plaintiffs' status as day laborers is a compelling factor that plaintiffs were in all respects independent contractors- **not** covered employees. As day laborers, plaintiffs were in business for themselves, no matter how great or how small their revenues and profits. Plaintiffs actually offered their daily labor to others while standing outside Home Depot and elsewhere. They were free to work for others and did so. They had no set work schedule with defendants, were part time, and the nature of defendants' business is seasonal. There was no permanence to the relationship.

*Defendants' degree of control*.   The record shows that the Defendants did not exercise substantial control over Sanchez when he was performing dumping services using his own dump truck. Likewise, Sanchez only drove the company van occasionally over an approximate six to seven-month period from the middle of May 2015 until his Sanchez's services were terminated towards the end of 2015. Sanchez would pick up the van at varying times of the morning as communicated to him by Sage in text messages. Sanchez generally had between one to two hours to do as he pleased from the time he picked up the van until he would show up at the defendants' customers' homes. This was especially meaningful as most customers' homes were within 15 minutes' drive time from Oceanside.

*Plaintiffs' opportunity for independent profit/loss in their own businesses.*   Sanchez in owning his own dump truck had an independent opportunity for profit or loss.  Sanchez and Sage negotiated the price that Sanchez charged for each dumping job. Sanchez also failed to allege and prove any contractual agreement with defendants which would have precluded him from providing dumping services for others. Sanchez was free to seek out and service any dumping customers of his choice and did so occasionally.

These factors indicate Sanchez's independent contractor status.  Plaintiffs' underlying provision of day labor roofing services was likewise subject to their own control and choice, and was part time and seasonal and lacking permanence. In all respects plaintiffs acted as independent contractors.

10

## PLAINTIFFS' FAILURE TO MEET THEIR BURDEN OF PLEADING & PROOF

Under the FLSA, an employee may meet his or her burden of proof by producing "sufficient evidence from which violations of [the FLSA] and the amount of an award may be reasonably inferred." *Reich v. Southern New Eng. Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997). If an employee offers such evidence, an employer must then "come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Yu Y. Ho v. Sim Enterps., Inc.*, No. 11 CV 2855, 2014 WL 1998237, at *14 (S.D.N.Y. May 14, 2014) (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 688-89 (1946).

At trial, the plaintiffs had no no recollection of the actual number of Saturdays and Sundays they worked, and, despite being offered multiple opportunities, were totally unable to state any particular week they worked more than 40 hours. See Plaintiff's proposed findings of fact # 24.

 Their testimony offered no viable and credible estimate of the hours worked or the damages allegedly sustained. In each such respect, plaintiffs failed to meet their burden of pleading and proving their claims with the required specificity. Instead they pled the most generalized allegations and then failed at trial to fill in the blanks specifically or credibly. Rather they improperly sought to shift their entire burden onto defendants.

 Even assuming arguendo that plaintiffs have somehow met their burden; the evidence put forth by defendants, in both documents (including cashed pay checks to Sanchez; 1099 Forms to Sanchez; text messages from Sage to Sanchez listing dates, times and locations for meeting; and defendants' calendars for the years 2012 through 2015 listing all active jobsites involving crews as "to do jobs") and in testimony, clearly and amply overcame any minimal demonstration by plaintiffs.

 While  plaintiffs in these types of cases "cannot be expected to allege `with mathematical precision,' the amount of overtime compensation owed by the employer," "they should be able to specify at least

one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Dejesus v. HF Mgmt. Servs., LLC,* 726 F.3d 85, 90 (2nd Cir.2013). A plaintiff must allege "forty hours of work in a given workweek as well as some uncompensated time in excess of the forty hours." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 242 (3d Cir. 2014).

The Second Circuit requires that plaintiffs provide "sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192, 201 (2d Cir. 2013); *Lundy v. Catholic Health Sys. of Long Island Inc.*, supra; *see also DeJesus v. HF Mgmt. Servs., LLC, supra* at, 89-90 (2d Cir. 2013); *Spiteri v. Russo,* 2013 WL 4806960, at *56 (E.D.N.Y. Sept. 7, 2013) (plaintiff's allegation that during the "time relevant herein, Plaintiff worked approximately fifty (50) to (60) hours per week" not sufficient to plead FLSA overtime claim).

Within this Circuit, some courts have required approximation of the total uncompensated hours worked during a given workweek in excess of 40 hours. *See, e.g., Nichols v. Mahoney,* 608 F.Supp.2d 526, 547 (S.D.N.Y.2009); *Zhong v. August Corp.,* 498 F.Supp.2d 625, 628 (S.D.N.Y.2007). *Lundy v. Catholic Health Sys. of Long Island Inc.*at 114. Here plaintiffs have failed to provide such a good faith specific estimate and instead have relied solely upon conclusory allegations of "generally" worked hours and upon allegations of Saturdays and Sundays worked, which the plaintiffs themselves in testimony contradicted and refuted.

Plaintiffs' vague allegations and testimony of working beyond 40 hours a week on some unspecified occasions are plainly insufficient requiring dismissal. *Jian Zhong v. August Corp.*, 498 F. Supp. 2d 625, 630 (S.D.N.Y. 2007); *Acosta v. Yale Club*, 94-CV-0888. 1995 U.S. Dist. LEXIS 14881, at *10 (S.D.N.Y. 1995) (dismissing FLSA complaint where plaintiffs "cite various instances when they worked several extra hours in a given day" but failed to "offer any examples of situations when management employed

them for more than 40 hours in a week without paying them overtime"). Here, Plaintiffs have failed to meet such requirements.

### PLAINTIFFS' MINIMAL WAGE, GAP TIME AND OVERTIME CLAIMS- NOT VIABLE

The FLSA minimum wage provision requires that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce ... wages... not less than" the then existing minimum hourly wage. 29 U.S.C. § 206(a)(1). The Second Circuit recognized this construction in a civil case, *see Rogers v. City of Troy,* 148 F.3d 52, 59 (2d Cir.1998), and lower courts in this circuit have followed suit. *See Donovan v. Kaszycki & Sons Contractors, Inc.,* 599 F.Supp. 860, 868-69 (S.D.N.Y. 1984); *Marshall v. Sam Dell's Dodge Corp.,* 451 F.Supp. 294, 302-03 (N.D.N.Y. 1978). Moreover, other circuits have followed this construction as well. *See Hensley v. MacMillan Blondel Containers, Inc.,* 786 F.2d 353, 357 (8th Cir.1986); *Dove v. Coupe,* 759 F.2d 167, 171-72 (D.C.Cir. 1985); *Blankenship v. Thurston Motor Lines, Inc.,* 415 F.2d 1193, 1198 (4th Cir. 1969)

Fairly construed, Plaintiffs' amended complaint also alleges a "gap time" claim seeking backpay for unpaid work performed below the overtime threshold. See *Conzo v. City of New York,* 667 F. Supp. 2d 279, 282-84 (S.D.N.Y. 2009).

The facts established at trial, however, belie plaintiffs' claims for minimum wages, gap time wages and overtime wages. First, plaintiffs were paid by the day in amounts exceeding the minimum wage. Second, there was no set work schedule. Third plaintiffs were part time day laborers. Fourth, on each of the rare occasions that plaintiffs and the other day laborers worked past 4 pm on a given day, they were each paid an additional $ 100, irrespective if they had or had not worked more than 40 hours work in any such week. Accordingly, there was no overtime work and no uncompensated overtime work. The additional $100 compensation was well above the time and one-half

A gap-time claim is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours. An employee who has not worked overtime has no claim under FLSA for hours worked below the 40-hour overtime threshold, unless the average hourly wage falls below the federal minimum wage. *See United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487, 494 (2d Cir.1960) (denying petitions for rehearing); *Monahan v. Cnty. of Chesterfield,* 95 F.3d 1263, 1280 (4th Cir.1996) ("Logically, in pay periods without overtime, there can be no violation of section 207 which regulates overtime payment."). *Lundy v. Catholic Health Sys. of Long Island Inc*., supra at 115; *and see Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969) (concluding that there is no FLSA minimum wage violation so long as "each employee received during each week compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate"); *Adair v. City of Kirkland,* 185 F.3d 1055, 1062 n. 6 (9th Cir. 1999).

The text of FLSA requires only payment of minimum wages and overtime wages. *See* 29 U.S.C. §§ 201-19 and does not afford a recovery for gap-time hours. *Lundy v. Catholic Health Sys. of Long Island Inc.* at 115. The reasoning in *Klinghoffer* confirms this view: "[T]he agreement to work certain additional hours for nothing was in essence an agreement to accept a reduction in pay. So long as the reduced rate still exceeds [the minimum wage], an agreement to accept reduced pay is valid...." 285 F.2d at 494. Plaintiffs here have and cannot not prove they were paid below minimum wage. *Lundy v. Catholic Health Sys. of Long Island Inc*., supra at 115.  So long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week. *See id.*

.    Plaintiffs cannot avoid this clear rule of law by their conclusory allegations they were paid nothing for hours worked in excess of 40 hours a week. While Plaintiffs could possibly state a claim, if properly

14

pled, for a failure to pay *overtime* for the hours worked in excess of 40 hours a week, they do not state a claim for failure to pay *minimum wage* for those hours. This is so because "[a]n employee cannot state a claim for a minimum wage violation `unless [his] *average* hourly wage falls below the federal minimum wage.'" *Johnson v. Equinox Holdings, Inc.,* No. 13-CV-6313, 2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014) (alteration in original) (emphasis added) (quoting *Lundy v. Catholic Health Sys. of Long Is. Inc.,* 711 F.3d 106, 115 (2d Cir.2013).

An employee's average hourly wage is calculated "by dividing his total remuneration for employment... in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. "For minimum-wage recovery under the FLSA, the pertinent question is whether `the amount of compensation received by an employee results in a straight-time hourly rate that is less than the applicable federal minimum wage.'" *Chuchuca v. Creative Customs Cabinets Inc.,* No. 13-CV-2506, 2014 WL 6674583, at *9 n. 10 (E.D.N.Y. Nov. 25, 2014) (quoting *Gordon v. Kaleida Health,* 847 F.Supp.2d 479, 490 (W.D.N.Y. 2012)).

Here, Plaintiffs testified at trial that when they were first employed, they were paid $ 110 or 120  per day and that their pay rates were increased to $180 to 200 per day. In their amended complaint they allege in conclusory fashion a 57.5-hour work week for Sanchez, and that they frequently worked in excess of 10 hours per day. (*Amended Complaint* ¶¶ 22.) Furthermore, they allege that they were not paid for the hours he worked in excess of 40 hours a week. (*Id.* ¶ 37.) This allegation was specifically refuted by the evidence of the checks paid to Sanchez (Plaintiffs' Exhibit 14 and plaintiffs admissions at trial about their per day rates of compensation actually received.

Plaintiffs testimony they were paid by the day at rates between 120 per day and $ 200 per day proves such payments were well in excess of the federal and state minimum wages. *See Mendoza v. Little Luke, Inc.,* No. 14-CV-3416, 2015 WL 998215, at *5 (E.D.N.Y. Mar. 6, 2015) (noting that federal minimum

wage under the FLSA in 2015 was  $7.25 an hour and New York minimum wage under the NYLL was $8.75 an hour).

   As plaintiffs failed to specify facts demonstrating hours actually worked, the court has been left to provide possible examples.  If plaintiffs worked 10 hours a day then they would have been paid between the equivalent of $ 12.00 per hour and up to $20.00 per hour. If they worked 12 hours per day then they would have been paid between the equivalent of $ 10.00 per hour and up to $ 16.66 per hour. Such rates exceed the minimum wage and overtime wages. As plaintiffs failed to prove specify facts demonstrating hours actually worked, the court has been left to provide these possible examples.

   The compensation plaintiffs received exceeded the minimum wage even after accounting for the hours allegedly not paid. Moreover, their testimony as to lengthy hours allegedly worked is belied by (i) the time restrictions imposed by lighting conditions required for roofing as an outdoor endeavor;(ii) the local ordinances limiting the available number of work hours; (iii) Sanchez' testimony that his only aim in commencing this action was to reconnect with defendants as a service provider; and  (iv) by the totality of the evidence including the seasonal nature of the business, customer availability, and the testimony of other workers as to the number of days and hours worked.

   Thus, the evidence presented and the reasoning in *Lundy,* mandates Plaintiff's FLSA minimum wage claim be dismissed.  See also, *U.S. v. Klinghoffer supra; Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 246 (S.D.N.Y. 2015),, *Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, No. 13 CV 6789, 2015 WL 5567073, at *8 (E.D.N.Y. Sept. 21, 2015); *Caci v. Wiz of Lake Grove, Inc.*, 267 F. Supp. 2d 297, 300 (E.D.N.Y. 2003); *and see, Anchor Motor Freight Ass'n v. Anchor Motor Freight, Inc.,* 1988 WL 156772, at *5 (D. Del. Jan.31, 1988); *Conzo*, 667 F. Supp. 2d at 284.  After all, if an employee's average wage exceeds the minimum, then no minimum wage violation has occurred. See 29 U.S.C. § 206. And "[l]ogically, in pay periods without overtime, there can be no violation of [29 U.S.C. § 207]

which regulates overtime payment."  Similar decisions have been reached in other circuits, See, e.g., *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1280 (4th Cir. 1996).

To recover overtime compensation under the FLSA, "an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference." *Davis v. Food Lion,* 792 F.2d 1274, 1276 (4th Cir.1986) (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)).

In order to state an FLSA overtime claim, a plaintiff must allege "forty hours of work in a given workweek as well as some uncompensated time in excess of the forty hours." *Davis v. Abington Mem'l Hosp.,* 765 F.3d 236, 242 (3d Cir. 2014).

However, plaintiffs have failed to allege and prove sufficient facts on their overtime claims to survive a motion to dismiss.[5] Three district courts in this Circuit dismissed complaints nearly identical to plaintiffs' amended complaint. *See Sampson v. Medisys Health Network Inc.,* No. 10-cv-1342 (SJF) (ARL), 2011 WL 579155 (E.D.N.Y. Feb. 8, 2011); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,* Nos. 10-cv-2661 (PAC), 10-cv-2662 (PAC), 10-cv-2683 (PAC), 10-cv-3247 (PAC), 2011 WL 321186 (S.D.N.Y. Jan. 28, 2011); *Wolman v. Catholic Health Sys. of Long Island, Inc.,* No. 10-cv-1326 (JS) (ETB), 2010 WL 5491182 (E.D.N.Y. Dec. 30, 2010). Each dismissed plaintiffs' boilerplate complaints as there were "no factual allegations about when the alleged unpaid wages were earned or the number of hours allegedly worked without compensation— the heart of the claim." *Nakahata,* 2011 WL 321186, at *4 [parentheticals omitted]; *accord Sampson,* 2011 WL 579155, at *4.

---

[5] At trial plaintiffs' counsel argued against Defendants' FRCP 41 (b) motion to dismiss by erroneously asserting that any FLSA cases granting motions to dismiss the pleadings for failure to specify sufficient facts should not be controlling upon a motion to dismiss at trial. Such reasoning is erroneous because at trial, the plaintiffs were given every opportunity to testify and provide evidence to fill in the significant omissions in their amended complaint and still failed to do so.

Without alleging such supporting facts, plaintiffs here failed to give defendants the required fair notice of the basis of their FLSA overtime claims. *Wolman,* 2010 WL 5491182, at *4. To state a claim for relief for overtime violations under the FLSA, "the complaint should, at least approximately, allege the hours worked for which these wages were not received." *Zheng v. August Corp.,* 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007).

Here, plaintiffs have alleged only that they "generally" or "approximately" or "sometimes later" worked more than 40 hours per week. (Amended Complaint ¶s 19, 20, 21, 29,30,32). Plaintiffs testified to a lack of recollection and an inability to state how many Saturdays or Sundays they actually worked, even though their amended complaint made specific allegations on those matters. The variance between plaintiffs amended complaint and their trial testimony is astounding. Both plaintiffs testified they were unable to specify a given week in which they worked more than 40hours.

Further plaintiffs' general allegations are directly contradicted by facts and logic. The time restrictions of local ordinances and of day light hours, as well as the seasonal and weather restrictions all render the plaintiffs' testimony unreliable and contrary to logic. Such testimony was also expressly refuted by the other day laborers.

As noted in *Wolman,* 2010 WL 5491182, it is not enough "to `merely allege' that Plaintiffs worked `beyond forty hours per week.'" *Id.* at *4 (quoting *Zhong,* 498 F. Supp. 2d at 630). Instead, plaintiffs must provide at least some approximation of the overtime hours that defendants required them to work and a time frame for when those hours were worked.

As stated by the court in *Pruell v. Caritas Christi,* No. 09-11466-GAO, 2010 WL 3789318 (D. Mass. Sept. 27, 2010), in dismissing another substantially similar complaint:

> The plaintiffs also cannot avoid their pleading obligations by arguing that [their employer] has better access to information concerning hours worked or wages paid. Even when facts are peculiarly within the possession of a defendant, a plaintiff is not excused from his pleading obligations. …The facts necessary to state a claim . . . are not peculiarly within the possession of

[defendant]. The plaintiffs should know approximately how many hours they worked per week and their hourly rate or weekly wages.

## REGULAR RATE OF PAY: INAPPLICABLE AT BAR

The FLSA generally requires that a covered employee who works more than forty hours in a given week, be paid for the excess time at a rate "not less than one and one-half times the *regular rate* at which he is employed." 29 U.S.C. § 207(a)(1) (emphasis added). As plaintiffs have failed to properly plead and prove their overtime claims, the issue of "regular rate" does not properly arise.

The regular rate is "all remuneration for employment paid to ... the employee," minus certain exceptions inapplicable here. *Id.* at § 207(e). As the Supreme Court has explained, it is "the hourly rate actually paid the employee for the normal, non-overtime workweek," and "must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." *Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, 424-25, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945).

As well, this concept is inapplicable as the plaintiffs were paid a flat daily rate, *See, United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487, 491 (2d Cir.1960), and because plaintiffs have failed to allege and prove that they worked more than 40 hours.

The "regular rate" of pay, if applicable, is therefore something more than the base rate of pay and will vary according to the number of hours worked at the various base rates. This method is known as the "weighted average method" of determining the "regular rate." *Gorman v. Consol. Edison Corp.,* 488 F.3d 586, 596 (2d Cir. 2007).

"[T]he regular rate of pay cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from *what happens* under the employment contract." *Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 464, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948) (emphasis added); *see also Walling,* 325 U.S. at 424, 65 S.Ct. 1242; 29 C.F.R. § 778.109 ; *Gorman* at 597.

19

## PLAINTIFFS WERE PROMPTLY PAID

The FLSA, to the extent applicable, has long been interpreted to include a "prompt payment" requirement. *See, United States v. Klinghoffer Bros. Realty Corp., supra* at 491.Whether the prompt payment requirement has been violated "must be determined by reference to objective standards." *Rogers v. City of Troy, N.Y.,* 148 F.3d 52, 58 (2d Cir.1998). Specifically, payment of "overtime compensation earned in a particular workweek must [generally] be paid on the regular  pay day for the period in which such workweek ends" and in any event "may not be delayed for a period longer than is reasonably necessary to compute and arrange for payment of the amount due." *Conzo v. City of N.Y.,* 667 F.Supp.2d 279, 288 (S.D.N.Y.2009) (quoting 29 C.F.R. § 778.106); *see, e.g., Mendez v. U.S. Nonwovens Corp.,* 2 F.Supp.3d 442, 452-53 (E.D.N.Y.2014).

At bar the evidence is clear that plaintiffs were paid every Saturday on any week they performed any day labor for defendants and also shows they were paid earlier when they requested. [Defendants Findings of Fact # 22].

## PLAINTIFFS ARE *NOT* ENTITLED TO COMPENSATION FOR PRELIMINARY ACTIVITIES.

Under the FLSA, not all time spent on work related tasks before or after a shift is compensable. "[P]reliminary / postliminary activity," such as "changing clothes," is not compensable. See *Albrecht v. Wackenhut Corp*., 379 Fed. Appx. 65, 66, n.1 (2d Cir. 2010) (unpublished) (internal citations and quotations omitted); 29 U.S.C. § 254(a)(2) (no obligation to compensate for "activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities"). And even "principal" work activities are not compensable, if an employee spends only "de minimis" time on them. As explained in

*Wolman,* 2010 WL 5491182, at *2, "not all time spent on work related tasks before or after a shift is compensable.

Here, the plaintiffs' amended complaint does not plead facts as to the sorts of work performed before and after their shifts, or whether Plaintiffs typically spent more than *de minimis* time on these. Without such factual allegations and evidence, Plaintiffs have no "plausible" claim for relief. Id. at 1951; *See also Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 595 (2d Cir. 2007) (affirming dismissal of FLSA complaint predicated on uncompensated "time spent entering and exiting the facility, and donning and doffing a helmet, safety glasses and boots"); *Albrecht,* 379 Fed. Appx. at 66.

The Portal-to-Portal Act created two exceptions from FLSA-mandated compensation:

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. 29 U.S.C. § 254(a).

Each of the two subsections bears upon plaintiffs' claims. Under subsection (1), no pay is required for travel to and from the place where the employee performs his "principal activities"; the FLSA regulations define "principal activities" as those "which the employee is employed to perform." 29 C.F.R. § 790.8(a) (internal quotation marks omitted). Subsection (2) of the Portal-to-Portal Act "was intended to relieve employers from liability for preliminaries, most of them relatively effortless, that were thought to fall outside the conventional expectations and customs of compensation." *N.Y. City Transit Auth.,* 45 F.3d at 649.

In *IBP v. Alvarez,* at issue in the Supreme Court was: whether employees must be paid for time waiting, time in transit to the job-site, and time in transit back. 546 U.S. 21, 29-30, 39-40, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005). The Court first held that "any activity that is `integral and indispensable' to a

`principal activity' is itself a `principal activity' " *Id.* at 37, 126 S.Ct. 514. Then the Court held that awaiting the first principal activity of the workday is not itself a principal activity, *id.* at 40, 126 S.Ct. 514, citing 29 C.F.R. § 790.7(g), which "characterizes the time that employees must spend waiting to check in ... as generally a `preliminary' activity covered by the Portal-to-Portal Act." *Id.* at 41-42.

## PLAINTIFFS' FLSA CLAIMS, ARE LIMITED BY A TWO-YEAR STATUTE OF LIMITATIONS AS PLAINTIFFS FAILED TO PROVE A WILLFUL VIOLATION.

FLSA provides that actions thereunder must be commenced within two years "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U. S. C. § 255(a). *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 129, (1988).

Ordinary violations of the FLSA are subject to the general 2-year statute of limitations. To obtain the benefit of the 3-year exception, plaintiffs must prove a covered employer's conduct was willful. *Trans World Airlines, Inc.* v. *Thurston,* 469 U. S. 111, 125-130 (1985) [a violation is "willful" if "the employer either knew or showed reckless disregard of whether its conduct was prohibited] ;*McLaughlin v. Richland Shoe Co.,* supra.

Mere negligence is insufficient. *McLaughlin,* 486 U.S. at 133. The applicable statute of limitations requires a factual determination of defendants' knowledge or reckless disregard,[*See McLaughlin v. Richland Shoe Co.,* supra, ; *Young v. Cooper Cameron,* 586 F.3d 201, 207 (2d Cir.2009); *Eschmann v. White Plains Crane Service, Inc.,* 11-CV-5881, 2014 WL 1224247, at *5 (Mar. 24, 2014 E.D.N.Y.)], with the burden on the employee to show willfulness. *Herman v. RSR Sec. Svcs. Ltd.,* 172 F.3d 132, 141 (2d Cir.1999); *Parada v. Banco Indus. De Venezuela, C.A.,* 753 F.3d 62, 71 (2d Cir. 2014).

Here plaintiffs have failed to meet that burden. At trial, Sage testified to his limited education and having dyslexia. [Defendants' findings of Facts # 1]. He relied upon the advice of his accountant in treating plaintiffs as independent contractors and providing Sanchez with 1099 Tax Forms for the years 2012-2015. [Defendants' Findings of Facts #s 19-21]. Sage had an ample good faith basis for his reliance

and conduct.  The testimony showed that Sage was extraordinarily generous with plaintiffs, treated them fairly, loaned them money, and in the words of Sanchez "took care of all his needs." Such testimony is contra-indicative of willfulness or vindictiveness.

Plaintiff's NYLL claims, to the extent viable, are governed by a six-year statute of limitations. See *Winfield* v. *Citibank, N.A.*, ___ F. Supp.2d ___, 2012 WL 423346, at *11 (S.D.N.Y. Feb.9, 2012); *Dragone v. Bob Bruno Excavating, Inc*., 45 A.D.3d 1238 (3d Dept 2007).

## INDIVIDUAL VERSUS ENTERPRISE COVERAGE

Plaintiffs allege that Defendants failed to pay them both the federal minimum wage and overtime wages in violation of sections 206 and 207, respectively, of the FLSA. *See* 29 U.S.C. §§ 206, 207. The evidence however conclusively demonstrates that the scope of plaintiffs' services was entirely local within New York and primarily in Nassau or in Suffolk County.

Both the minimum and overtime wage sections of the FLSA provide coverage for every "employee who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce. . . ." *Id.* Thus, an employer is subject to both the minimum wage and overtime provisions of the FLSA if *either* (1) their employees are "engaged in commerce" or (2) the employer is an "enterprise engaged in commerce." *Id.*; *see also, Dejesus v. HF Mgmt. Servs., LLC,* 726 F.3d 85, 86 (2d Cir.2013) *cert. denied,* 134 S.Ct. 918, (2014); *Jacobs v. New York Foundling Hosp.,* 483 F.Supp.2d 251, 257 (E.D.N.Y.2007). These two distinct types of coverage are termed "individual coverage" and "enterprise coverage," respectively. *Jacobs,* 483 F.Supp.2d at 257; *Bowrin v. Catholic Guardian Society,* 417 F.Supp.2d 449, 457 (S.D.N.Y.2006) (citing *Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290 at 295 n. 8, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985).

A covered employee may come within the scope of the Act's individual or "traditional" coverage provided the employee "engaged in commerce or in the production of goods for commerce" irrespective of whether his employer is an enterprise engaged in commerce. 29 U.S.C. §§ 206(a), 207(a)(1); *see Brennan v. Arnheim & Neely, Inc.,* 410 U.S. 512, 516-17, 93 S.Ct. 1138, 1141, 35 L.Ed.2d 463 (1973); *see also Boekemeier v. Fourth Universalist Soc'y in the City of New York,* 86 F.Supp.2d 280, 285-87 (S.D.N.Y.2000).

To determine whether an employee performed such work, a court must focus its inquiry on the activities of the employee, and not the business of the employer. *See Mitchell v. Lublin McGaughy and Assocs.,* 79 S.Ct. 260 (1959).

Despite its expansive reading, it is uniformly recognized that in enacting the FLSA, Congress did not exercise its full authority under the Commerce Clause. *See id.* ("Congress, by excluding from the Act's coverage employees whose activities merely `affect commerce,' indicated its intent not to make the scope of the Act coextensive with its power to regulate commerce"); *McLeod v.  Threlkeld,* 319 U.S. 491, 497, (1943); *see also Wirtz v. R.E. Lee Electric Co.,* 339 F.2d 686, 689 (4th Cir.1964).

The definitive test is not whether the employee's tasks have some remote effect on interstate commerce, but whether the employee participated in the channels of commerce. See *Xelo v. Mavros*, 2005 WL 2385724, at *4 (E.D.N.Y. Sept. 28, 2005) (holding that a waiter at a local restaurant was not engaged in commerce). An employee engages in commerce when "a substantial part of the employee's work is related to interstate commerce." *Boekemeier v. Fourth Universalist Soc. in City of N.Y.,* 86 F. Supp.2d 280, 287 (S.D.N.Y. 2000) (quoting *Divins v. Hazeltine Electronics Corp.,* 163 F.2d 100, 103 (2d. Cir. 1947)). "The test . . . is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." *McLeod v. Threlkeld,* supra. Rather, it must be "directly and vitally

related to the functioning of an instrumentality or facility of interstate commerce . . . rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.,* 349 U.S. 427, 429 (1955).Moreover, Plaintiffs' handling of goods that may or may not have out-of-state origins does **not** demonstrate that they were engaged in interstate commerce. Precedent has distinguished employees who handle goods for a wholesaler and move them interstate, from those who handle goods after an employer acquires the goods for local disposition. See *McLeod*, 319 U.S. at 493. While the FLSA provides protections for the former group, it does not for the latter. Id.; accord, *Thorne*, at 1267, 2006 WL 1228863, at *3 ("When goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further intra state movement of the goods are not covered under the Act"); Xelo, 2005 WL 2385724, at *4.

The FLSA defines the term "enterprise" as follows:

> the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units. 29 U.S.C. § 203(r)(1).

To constitute an "enterprise" within the meaning of, 29 U.S.C. § 203(r)(1), defendants must perform related activities through common control for a common business purpose. *See Donovan v. Janitorial Services, Incorporated,* 672 F.2d 528, 530 (5th Cir.1982); *Brennan v. Veterans Cleaning Service, Inc.,* 482 F.2d 1362, 1366 (5th Cir.1973); *Shultz v. Mack Farland & Sons Roofing Co.,* 413 F.2d 1296, 1299 (5th Cir.1969).[6]

---

[6] Here the defendant LLC ceased to exist after 2015 and the defendant corporation was created at that time. Under traditional common law rules, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities. *See New York v. Nat'l Serv. Indus., Inc.,* 460 F.3d 201, 209 (2d Cir. 2006) (("*Nat'l Serv. Indus. II*"). There are four common exceptions (1) the purchaser expressly or impliedly assumed the seller's tort liability; (2) there was a consolidation or merger of the seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) the transaction was entered into fraudulently to escape obligations related to the seller's liabilities. *See id.* The Second Circuit has not decided whether the substantial continuity standard used in the NLRA context also applies in the FLSA context. *See Kaur v. Royal Arcadia Palace, Inc.,* 643 F. Supp. 2d 276, 289 n.10 (E.D.N.Y. 2007).

Sections 206 and 207 also both provide for enterprise coverage if an employer is an "enterprise engaged in commerce." 29 U.S.C. §§ 206, 207. Enterprise coverage applies when an employer, *inter alia*, grosses at least $500,000 in annual sales in each year. *Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 305 (E.D.N.Y. 2014) ; *Archie v. Grand Cent. P'ship, Inc.*, 997 F.Supp. 504, 528 (S.D.N.Y.1998) (Sotomayor, J.) ;29 U.S.C. § 203(s)(1)(A)(ii).

Defendants' tax returns negate any such claim. *Jian Long Li v. Li Qin Zhao*, *supra.* Here defendants' tax returns demonstrate that only in 2013 did defendants gross more than $ 500,000. Plaintiffs' Exhibits 11-13. Moreover, applying the two-year statute of limitations, the 2013 tax returns would not be applicable in any event.

Those of Plaintiffs' claims alleged to have occurred in 2011 and 2012, were governed by the minimum wage in New York of $7.25 an hour (12 NYCRR 142-2.4 [1]). As relevant here, in New York, "[e]very employer shall pay to each of its employees for each hour worked a wage of not less than: . . . $7.15 on and after January 1, 2007, $8.00 on and after December 31, 2013, [and] $8.75 on and after December 31, 2014." Labor Law § 652(1); see 12 NYCRR 142-2.1(a).

## PROMOTIONAL STATEMENTS MADE ON DEFENDANTS' WEB-SITE DO NOT SUPPORT PLAINTIFFS' CLAIMS

At trial plaintiffs sought to rely upon statements made in defendants' web site.  The web site was developed and constructed using the words of Sage's neighbor who is in the business of developing web sites. [Defendants' findings of fact #s 61 & 62]. Such statements were wholly promotional not contractual.  Without a contract, there can be no third-party beneficiary.

Plaintiffs disingenuously claim reliance on web site statements that defendants perform their roofing services with their able and trained crews without farming the work out to sub-contractors. Facially, such

---

The FLSA itself does not address the issue of liability for successor employers. *See Steinbach v. Hubbard,* 51 F.3d 843, 845 (5th Cir. 1995).

promotional claims are inapposite to plaintiffs' claims. Defendants' crews consisted of their more experienced and skilled roofers such as Maldonado and less experienced day laborers such as plaintiffs, performing more limited tasks (such as shingle and rubbish removal) under the supervision of the foreman. Moreover, the statement sought to be relied upon, does not indicate how the parties regarded the economic relationship amongst themselves or for tax purposes.

Plaintiffs did **not**, in their original or amended complaint, plead any claim based upon third party beneficiary status or equitable estoppel. [Plaintiffs' Exhibits 2 & 16]. Therefore, the evidence of the contents of defendants' web site is to be disregarded.

The ordinary construction contract (one not expressly stating any intention of the contracting parties to benefit a third party), does not give rise to third party liability. Rather, such third parties are incidental beneficiaries. (*Cerp Constr. Co. v J. J. Cleary, Inc.*, 59 Misc 2d 489, affd 31 AD2d 784; *International Erectors v Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465; *Watson v American Creosote Works*, 184 Okla 13; see 4 Corbin, Contracts, § 779D.; Restatement, Contracts, 2d, § 133, Illustration 18 [Tent Draft No. 4, 1968]; 2 Williston, Contracts [3d ed], § 402; Simpson, Promises Without Consideration and Third-Party Beneficiary Contracts in American and English Law, 15 Int & Comp LQ 835, 856.)

The intent to benefit a third party must be shown within the four corners of a contract. *Port Chester Elec. Constr. Corp. v Atlas*, 40 N.Y.2d 652; *Beveridge v New York El. R. R. Co.*, 112 N.Y. 1). In the absence of a contract, there is no third-party beneficiary. See, *Matter of Associated Teachers of Huntington v Board of Educ.*, 33 N.Y.2d 229. The benefit to the third party must not be merely incidental, but immediate to such a degree indicating intent to make reparation if the benefit is lost. *Associated Flour Haulers & Warehousemen v Hoffman*, 282 N.Y. 173; *Moch Co. v Rensselaer Water Co.*, 247 N.Y. 160. Absent such intent, the third party is merely incidental with no right to relief. *Port Chester Elec. Constr. Corp. v Atlas*, *supra*; *Associated Flour Haulers & Warehousemen v Hoffman*, *supra*; *Moch Co.*

*v Rensselaer Water Co.*, *supra*; *Flemington Nat. Bank & Trust Co. [N. A.] v Dolmer Leasing Corp.*, 65 AD2d 29.

The party, claiming to be a third-party beneficiary, has the burden of demonstrating an enforceable right. *Flemington Nat. Bank & Trust Co. [N. A.] v Domler Leasing Corp.*, *supra*.

Claimed reliance upon the language in defendants' web site does not support an assertion of equitable estoppel. Equitable estoppel prevents one from denying his own expressed or implied admission which has in good faith been accepted and acted upon by another. The elements of estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. The party asserting estoppel must show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position. *Matter of New York State Guernsey Breeders' Co-op. v Noyes*, 260 App Div 240, 248, mod on other grounds 284 N.Y. 197; *and see*, generally, 21 NY Jur, Estoppel, § 21, p 27).

Here defendants' web site targeted potential customers, not day laborers such as the plaintiffs. The plaintiffs knew they treated as independent contractors being paid by the day as day laborers not on defendants' payroll. Defendants' web site is written in English and the plaintiffs do not read or write English. [Defendants' findings of fact # 9]. Plaintiffs cannot possibly therefore demonstrate reliance or any prejudicial change in their position.

### PLAINTIFFS FAILED TO PLEAD AND PROVE ANY CLAIMS TO PIERCE DEFENDANTS' CORPORATE VEIL OR SUPPORT APPLICATION OF ALTER EGO.

Based upon the following analysis, plaintiffs' attempts to pierce the defendants' corporate veil and establish an alter-ego must be denied.

Federal courts require that veil piercing be sufficiently pled in the complaint or raised formally early in an action. *See, De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69-70 (2d Cir. 1996); *Scarbrough v.*

*Perez*, 870 F.2d 1079, 1083-84 (6th Cir. 1989); *Luyster v. Textron, Inc*., No. 06 Civ. 4166, 2007 WL 1792505, at \*2-3 (S.D.N.Y. June 18, 2007); *EED Holdings v. Palmer Johnson Acquisition Corp*., 387 F. Supp. 2d 265, 274 (S.D.N.Y. 2004); *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 122 (S.D.N.Y. 1996); *Stockmar v. Warrec Co.,* 844 F. Supp. 103, 106 (D. Conn. 1994) (requiring alter ego liability be pled in complaint).

In New York is not veil piercing as a freestanding action. *See*, *Morris v. New York State Department of Taxation and Finance,* 82 N.Y.2d 135, 142 (veil piercing is equitable in nature, not a cause of action independent of that against the corporation, requiring pleading and proof of persuasive predicate facts). *See also, East Hampton Union Free School District v. Sandpebble Builders, Inc.*, 16 N.Y.3d 775, 776, (2011).

Here, Plaintiffs failed to plead alter ego theory and veil piercing in their original or amended complaint and failed allege any predicate facts. [Plaintiffs' Exhibits 2 & 16]. As such, defendants had no notice of plaintiffs' veil piercing and alter-ego theories. On that alone, these assertions should be rejected.

On claims involving a federal statute requiring national uniformity, federal common law of veil piercing applies. See *United States v. Peters*, 732 F.3d 93, 103 n.4 (2d Cir. 2013) (quoting *Brotherhood of Locomotive Engineers v. Springfield Terminal Railway Co.,* 210 F.3d 18, 26 (1st Cir. 2000))); *Burberry Ltd. v. Horowitz,* 534 F. App'x 41, 46 & n.1 (2d Cir. 2013); *Lowen v. Tower Asset Management, Inc*., 829 F.2d 1209, 1220 (2d Cir. 1987).

Under federal common law, there are two possible grounds to pierce the corporate veil. First is an individual's total domination and control of a subject corporation such that he or she is conducting their own personal business rather than corporate business. *Southern New England Telephone Co. v. Global NAPs Inc.,* 624 F.3d 123, 139 (2d Cir. 2010); *Williamson v. Recovery Ltd. Partnership,* 542 F.3d 43, 53

(2d Cir. 2008); *Thomson-CSF, S.A. v. American Arbitration Association*, 64 F.3d 773, 777 (2d Cir. 1995); *Lowen*, 829 F.2d at 1221.

Second is a demonstration an individual exploited the corporate entity to perpetrate a fraud or injustice. *Williamson*, 542 F.3d at 53; *Golden Horn Shipping Co. v. Volans Shipping Co*., No. 14 Civ. 2168, 2014 WL 5778535, at *2 (S.D.N.Y. Nov. 6, 2014); *British Marine PLC v. Aavanti Shipping & Chartering Ltd.,* No. 13 CV 839, 2013 WL 6092821, at *5 (E.D.N.Y. Nov. 19, 2013); *see also,  First National City Bank*, 462 U.S. at 629  (quoting *Taylor v. Standard Gas Co*., 306 U.S. 307, 322 (1939).

Plaintiffs have failed to present any such evidence. There is no injustice. Plaintiffs have been paid in excess of the minimum wage and overtime wages.

Federal courts sometimes consider these additional factors: disregard of corporate formalities; inadequate capitalization; intermingling of funds; overlap in ownership, officers, directors, and personnel; common office space, address and telephone numbers of corporate entities; the degree of discretion shown by the allegedly dominated corporation; whether the dealings between the entities are at arms' length; whether the corporations are treated as independent profit centers; payment or guarantee of the corporation's debts by the dominating entity, and intermingling of property between the entities. *Freeman v. Complex Computing Co*., 119 F.3d 1044, 1053 (2d Cir. 1997).

Plaintiffs failed to present evidence of disregard of corporate formalities, inadequate capitalization and intermingling of funds. Rather the evidence included tax returns which demonstrate the propinquity with which defendants treated each organization and Sage separately.

New York law common law governs plaintiffs' attempt to pierce the veil or assert alter-ego under the NYLL. *See, Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989); *Long Beach Road Holdings, LLC v. Foremost Insurance Co*., 75 F. Supp. 3d 575, 586 (E.D.N.Y. 2015); *and see*, *Fletcher v. Atex, Inc*., 68 F.3d 1451, 1456 (2d Cir. 1995).

In New York to pierce the corporate veil, one **must** establish "(i) that the owner exercised complete domination over the corporation **with respect to the transaction at issue**; **and** (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the corporate veil." *Broadridge Securities Processing Solutions, LLC v. Khashoggi*, 507 F. App'x 57, 57 (2d Cir. 2013) (quoting *American Fuel Corp. v. Utah Energy Development Co.,* 122 F.3d 130, 134 (2d Cir. 1997).[Emphasis added].  Here, Plaintiffs have failed to do so.

**Respectfully Submitted,**

_____

**Lee R. Pearlman, Esq.**
*Attorney for Defendants*
**54 Blydenburgh Road**
**Centereach, New York 11720**
**Tel.: 516 353 8481**
**Fax: 516 307 1551**
**leerpearlmanesq@aol.com**

31