UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOSE SANCHEZ and ANTONIO MEJIA
PALACIO,

                                Plaintiffs,                      **REPORT AND**
                                                                      **RECOMMENDATION**
        -against-                                               CV 16-2064 (DRH) (ARL)

OCEANSIDE FIRST CLASS ROOFING, INC., et al.,

                                Defendants.
-------------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

       Before the Court is the plaintiff's Motion for Attorneys' Fees and Costs pursuant to New York Labor Law §§ 663(1) and 198. For the reasons set forth below, the Court respectfully recommends that the plaintiffs' motion be denied with leave to renew.

## BACKGROUND

       The plaintiffs, Jose Sanchez ("Sanchez") and Antonio Mejia, Palacio ("Palacio"), commenced this action on April 26, 2016 against Oceanside First Class Roofing, Inc. ("Oceanside") and Ethan Sage ("Sage") to recover unpaid overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the New York Labor Law ("NYLL") Articles 6 and 19, and the New York Codes, Rules, and Regulations 142-2.2. ECF No. 1. They also asserted claims pursuant to NYLL § 195(1) and (3) alleging that the defendants had failed to furnish them with wage notices and wage statements. *Id.* After the defendants had filed their Answer and the Court had issued a Scheduling Order, the plaintiffs filed an Amended Complaint, on consent, joining First Class Home Improvement, LLC and First Class Roofing, Inc. as defendants. ECF No. 18.

1

In July 2017, the parties engaged in settlement discussions, but a settlement was not reached. Accordingly, a bench trial was held before District Judge Hurley on November 26, 27, and 28, 2017 to determine the merits of the plaintiffs' contentions. By Memorandum and Order dated August 28, 2018, Judge Hurley set forth his Findings of Fact and Conclusions of Law as required by Federal Rule of Civil Procedure ("FRCP") 52. ECF No. 38. In that decision, Judge Hurley first noted that although First Class Roofing, Inc. was named as defendant, no claims against it were pursued at trial. *Id.* The Court also noted that the plaintiffs' claims were for periods when they worked for the First Class Home Improvement, LLC and its successor, Oceanside, not First Class Roofing, Inc. Accordingly, the claims against First Class Roofing, Inc. were dismissed.

With respect to the balance of the defendants, the Court found that the plaintiffs' overtime claims were without merit. *Id.* It appears that Sanchez had testified at trial that he began work at 5:00 a.m. each work day when he picked up the company van, and that his shift usually ended around 7:00 p.m. after he dropped the van off. *Id.* Palacio similarly testified that his shift began every day at about 7:30 a.m. and ended at about 6:00 p.m. *Id.* Both plaintiffs claimed to have worked these hours a minimum of five days per week during the busy season every year. *Id.* Indeed, Sanchez testified that he "never worked less than 40 hours." *Id.* Sanchez even claimed that throughout the busy season he worked seventy (70) hours per week. *Id.* Palacio testified that during the busy season he worked fifty-two and one-half (52.5) hours per week, less his daily thirty-minute lunch breaks. *Id.* However, the Court found the plaintiffs' testimony as to the hours they worked to be at odds with that of their co-workers. *Id.* The Court also noted that the daily working hours alleged in the Complaint

2

extended from "6:00 a.m. until 6:00 p.m." *Id.* In their Amended Complaint, the plaintiffs relied on the same twelve-hour span rather than the different hours each testified about at trial. *Id.* In other words, at least with respect to Sanchez, his alleged starting time had suspiciously moved back an hour to 5:00 a.m. in between the pleading and trial stages. *Id.*

The Court also determined that although Sanchez did arrive at a location sometime before the actual roofing activities for the day started, most of the jobs were in the County of Nassau. *Id.* As such, the Court found that Sanchez's testimony concerning how he usually spent the first couple hours of his day in defendants' employ was unworthy of belief. *Id.* Moreover, while the defendants offered no records in evidence reflecting the plaintiff's starting or concluding times on the jobs, the Court found the plaintiffs' "shared testimony on this point [to be] concocted." *Id.* Specifically, the Court noted that the plaintiffs' testimony regarding their hours was contrary to all the other trial evidence on that point. *Id.* For example, Naheem Scafe, one of the plaintiffs' co-workers, had testified from July 2013 through the end of 2015 – except for a stint in jail from July 25, 2014 to May 28, 2015 – he worked with both plaintiffs and they would start the day at 7:30 a.m. and end the day at 3:30 to 4:30 p.m. *Id.*

In sum, the Court concluded:

> The lack of clarity and precision in plaintiffs' proof . . . is not primarily traceable to defendants' lack of record keeping as ordinarily one might expect to be the case. Instead the inadequacy is rooted in the unbelievable character of much of evidence presented by plaintiffs concerning Sanchez's starting and ending times and Palacio's proof as to the latter. Surely, an employee's proof, when confronted with an employer's inadequate or nonexistent payroll records, will not be deemed sufficient to create a "just and reasonable inference" of entitlement when such proof is believed to be bogus.

3

*Id.* Nonetheless, the defendants admitted that they had failed to provide the plaintiffs with wage notices. As a result, Sanchez was awarded the statutory maximum of $5000 and Palacio was awarded the statutory maximum available to his of $2500. *Id.*

On September 10, 2018, the plaintiffs filed the instant motion for attorneys' fees and costs. ECF No. 42. The motion was referred to the undersigned on September 11, 2018, for a a Report & Recommendation as to whether the motion should be granted and, if so, a determination as to the appropriate amount of attorneys' fees and costs to be awarded. The plaintiffs have requested attorneys' fees in the amount of $108,500 and costs of $6,340.86. In opposition to the motion, the defendants argue that the plaintiffs' fee application is "the height of hypocrisy and chutzpa" given the fact that the plaintiffs were not awarded any compensatory or punitive damages and their claims were primarily found to be "bogus" and "concocted."

## DISCUSSION

### I. Applicable Standard

"In the United States, parties are ordinarily required to bear their own attorney's fees" unless Congress has authorized the award of attorney's fees to the prevailing party in a statute. *Buckhannon Bd. & Care Home, Inc., v. West Virginia Dept. of Health & Human Res.,* 532 U.S. 598, 602, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001). NYLL § 198 is such a statute. It provides that:

> If any employee is not provided within ten business days of his or her first day of employment a notice as required by subdivision one of section one hundred ninety-five of this article, he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, *together with costs and reasonable attorney's fees.*

N.Y. Lab. Law § 198 (McKinney) (emphasis added). Where a party is entitled to fees, the district court calculates the "presumptively reasonable fee" by the "lodestar" method, which entails determining the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." In *Arbor Hill*, the Second Circuit held that in calculating a "presumptively reasonable fee," courts must consider a multitude of case-specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of hours reasonably spent on the case. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184, 190-91 (2d Cir. 2008). These factors include "complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively[,] the timing demands of the case, [and] whether an attorney might have an interest in achieving the ends of the litigation or might initiate the representation himself," *id.* at 184 – as well as the twelve factors the Fifth Circuit employed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson* factors include (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to properly perform the relevant services; (4) the preclusion of other employment attendant to counsel's acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the

5

"undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases. 488 F.2d at 717-19.[1]

However, the Supreme Court has repeatedly stated that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were "based on different facts and different legal theories." *Hensley*, 461 U.S. at 434. In this case, the defendants contend that the lodestar amount should be reduced to reflect the limited degree of success that the plaintiffs achieved. Specifically, it is their position that the plaintiffs' fee request is wholly unreasonable given the fact that the Court threw out the overtime claims.

"In resolving whether an attorney's potential fee should be reduced based upon the degree of [p]laintiff's ultimate success at trial, 'the Court must determine 'whether the claims on which plaintiff [ ] failed are sufficiently related to the prosecution of claims on which he succeeded, such that the time spent on the failed claims should be compensated.'" *Cabrera v. Schafer*, No. CV 12-6323 (ADS) (AKT), 2017 U.S. Dist. LEXIS 24606 (E.D.N.Y. Feb. 17, 2017) (quoting *Tatum v. City of N.Y.*, No. 06-CV-4290, 2010 U.S. Dist. LEXIS 7748, 2010 WL 334975, at *10 (S.D.N.Y. Jan. 28, 2010); see also *Hensley*, 461 U.S. at 435 (finding that a fee award may require reduction where a plaintiff "has achieved only partial or limited success"); G.B. *ex rel.*

---

[1] Although the *Perdue* decision cast doubt on the usefulness of the *Johnson* factors as a methodology for determining attorneys' fees, 130 S. Ct. at 1672, reference to the *Johnson* factors is still useful in calculating a presumptively reasonable fee in this Circuit. *See Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511, 515 n.2 (S.D.N.Y. Apr. 29, 2015).

6

*N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 428 (S.D.N.Y. 2012) ("[C]ourts may make adjustments to the presumptively reasonable fee based on [ ] the degree of success obtained by the prevailing party"). "A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were 'based on different facts and different legal theories.'" *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley*, 461 U.S. at 434). For these reasons, a substantial reduction must be made for the plaintiffs' lack of success. The plaintiffs failed to prevail on any of their FLSA or parallel NYLL claims, the claims against First Class Roofing, Inc. were dismissed in their entirety, and one of their two wage notice claims was denied. Nor does the undersigned find that the successful and unsuccessful claims are "inextricably intertwined." Certainly, the plaintiffs could have independently sought damages relating to the defendants' undisputed failure to provide wage notices. Accordingly, the undersigned recommends that the motion for attorneys' fees and costs be denied with leave to renew based only on the work performed in connection with the successful wage notice claim.[2]

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28

---

[2] The Court need not address at this time the parties' argument concerning whether the time expended litigating the independent contractor defense is sufficiently related to the successful wage notice claim at this time.

7

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
      May 9, 2019

                                                  _____/s/_____
                                                  ARLENE ROSARIO LINDSAY